IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD ALLEN CANNON,       )
    Petitioner,           )
                          )
    v.                    )  2:11-cv-920
                          )
SUPERINTENDENT BRIAN THOMPSON, )
et al.,                       )
    Respondents.`         )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that petition of Richard Allen Cannon for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Richard Allen Cannon has presented a petition for a writ of habeas corpus. He is presently serving a twelve to twenty-five year sentence imposed following his conviction, by a jury, of possession with intent to distribute cocaine, criminal use of a communication facility and various misdemeanors at No. CP-43-CR-1003-2004 in the Court of Common Pleas of Mercer County, Pennsylvania. This sentence was imposed on October 6, 2005.[1] An appeal was taken to the Superior Court in which the issues presented were:

1. Whether the Trial Court erred in improperly allowing the Commonwealth to strike an Afro-American juror from the Appellant's potential jury pool?

2. Whether the Trial Court erred in overruling the Appellant's request that the jury receive a copy of Commonwealth witness Hackett's sentence deal to review at the time of their deliberation?

3. Whether the Trial Court erred in providing the jury additional instructions about "accomplice liability" which was outside the scope of the jurors' questions pertaining to the definition of possession and possession with intent to deliver a controlled substance?

---

[1] See: Petition at ¶¶

4. Whether the Trial Court erred in ruling that the evidence presented to the jury by the Commonwealth was sufficient to convict the Appellant of Count 7 of the information which was possession with intent to deliver?

5. Whether the Trial Court abused its discretion in sentencing the Appellant to a term of imprisonment of 12 to 25 years in that the sentence was excessive and unduly harsh?[2]

The judgment of sentence was affirmed on February 6, 2008.[3] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising these same issues[4] and leave to appeal was denied by the Pennsylvania Supreme Court on October 14, 2008.[5]

On December 30, 2009, Cannon unsuccessfully sought post-conviction relief.[6] An appeal was taken to the Superior Court in which the sole issue presented was:

> Were all prior counsel ineffective for failing to properly raise a claim that the Commonwealth manipulated Defendant's sentence and committed sentence entrapment by waiting to arrest Defendant 6 drug transactions and a four month period resulting in an increase of the mandatory minimum sentences requested from 5 to 32 years? (sic.)[7]

On January 25, 2011, the denial of post-conviction relief was affirmed.[8] Although granted leave to file a petition for allowance of appeal to the Pennsylvania Supreme Court, petitioner failed to do so and his case was closed on November 1, 2011.[9]

Cannon now comes before this Court and contends he is entitled to relief on the following grounds:

1. The trial court allowed the Commonwealth to strike an Afro-American jury from the petitioner's potential jury pool… The Commonwealth advise[d] the court that they intended to strike the Afro-American juror since she had an offense for shoplifting. Trial counsel lodge[d] a timely objection under <u>Batson</u> which was overruled and the Commonwealth was allowed to strike one of the only two Black jurors randomly selected from the larger pool or jurors.

---

[2] See: Exhibit Y to the answer at p.7.
[3] See: Exhibit Z to the answer. While the petitioner sets forth the affirmance date as February 6, 2006, the records demonstrate a date of February 6, 2008.
[4] See: Exhibit AA to the answer at p.3.
[5] See: Exhibit CC to the answer.
[6] See: Petition at ¶11.
[7] See: Exhibit QQ to the answer at p.4.
[8] See: Exhibit TT to the answer.
[9] See: Supreme Court Docket No. 27 WM 2011 available at http://ujsportal.pascourts.us.

2. Trial court erred in providing jury instructions about accomplice liability which was outside the scope of the jurors' questions regarding the definition of possession and [possession with intent to distribute].

3. The evidence presented to the jury by the Commonwealth was not sufficient to convict the defendant on count 7 [possession with intent to deliver].

4. Ineffective assistance of counsel(s) for failing to properly raise a claim that the Commonwealth manipulated the defendant's sentence and sentence entrapment by waiting to arrest defendant [on] 6 drug transactions [occurring during] a four month period resulting an in increase of the mandatory minimum sentences requested from 5 to 32 years.[10]

Respondents appear to concede that the instant petition is timely filed.[11]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental

---

[10] See: Petition at ¶12.
[11] See: Answer at p.23 and 28 U.S.C. §2244(d).

3

miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010). The Commonwealth also concedes that the petitioner has exhausted his state court remedies and that his petition is properly before this Court.[12]

The background to this prosecution is set forth in the February 6, 2008 Memorandum of the Superior Court:

---

[12] See: Answer at p.25.

4

> Appellant was charged with [seven counts each of possession of cocaine, possession of cocaine with intent to deliver, and criminal use of a communication facility]. The charges arose after police utilized a confidential informant ("CI") to conduct controlled buys of large quantities of that drug. Appellant was recorded during his conversations with the CI, and extensive Police surveillance was conducted of each buy. On August 18, 2005, a jury convicted Appellant of the seven counts of possession and possession with intent to deliver…[13]

The first issue which Cannon raises is that the trial court improperly permitted the Commonwealth to strike one of the two African Americans jurors in the jury pool. As observed in Batson v. Kentucky, 476 U.S. 79 (1986), while a defendant has no Constitutionally protected right to be tried by a jury composed in part or entirely of persons of his/her own race, the exclusion of jurors based solely on race is impermissible. Interestingly enough, the Commonwealth notes that "petitioner, who is an African American male, correctly points out that the jury pool contained only two African Americans, one of which was struck by the Commonwealth. Interestingly, the other African American Juror was struck by petitioner."[14]

In this regard, during the jury selection process, the Commonwealth moved to strike juror number 5, an African American making clear that the objection was not racially based but rather was as a result of her prior conviction of "a shoplifting charge which would be crimen falsi" (TT. 8/15-18/2005 p.59). Defense counsel's challenge under Batson was overruled (TT. 8/15-18/2005 p.61).

When raised in the trial court, the court concluded that as a result of the potential juror's prior criminal conviction, the prosecution's reason for striking her was race-neutral. The court also observed that at the time the Commonwealth exercised it strike which was its last available peremptory strike another African American who was ultimately stricken by the defense remained in the jury pool.[15]

Whether striking a potential juror is racially motivated is a question of fact. Miller-El v. Dretke, 545 U.S. 231, 240 (2005). Thus, the court's finding is entitled to a presumption of correctness. 28 U.S.C.§2254(e)(1). Nothing has been demonstrated which would indicate that the

---

[13] See: Exhibit Z to the answer.
[14] See: Answer at p.28.
[15] See: Exhibit V to the answer at pp.5-6.

5

strike was exercised in other than a legitimate non-racially motivated manner. Accordingly, this claim does not provide a basis for relief.

Petitioner next contends that in response to a question from the jury about possession and possession with intent to deliver, the trial court delivered additional instructions regarding accomplice liability. That is, the petitioner objects to the fact that the trial court responded in a more expansive manner than required to respond to the inquiry. In gauging whether a due process violation occurred, a jury instruction must be reviewed in the context of the entire instructions as a whole and not in isolation. Estelle v. McGuire, 502 U.S. 62, 72 (1991). As the trial court noted "the question I have received is: What is the difference between unlawful delivery and possession?"[16] The court observed that while the scope of the question was not totally clear it delivered clarifying instructions including repeating instructions on accomplice liability.[17] Counsel for the petitioner objected to the inclusion of accomplice liability in this supplemental instruction.[18] In the Superior Court as here, the petitioner failed to set forth any basis for this claim other than it was an abuse of discretion.[19]

Clearly, the response to the jury's question by the court in no way misstated the law but merely went beyond the scope of the inquiry and repeated a portion of the prior instructions. Thus, viewing the instructions as a whole there is no basis for granting relief here.

Cannon's third issue was that the evidence presented at trial was insufficient to sustain his conviction of possession with intent to deliver, charged in Count 7 of the criminal information. The standard employed in gauging the sufficiency of the evidence is whether based on the evidence presented any rational fact finder could determine guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Any review is limited to the evidence presented at trial. Herrtera v. Collins, 506 U.S. 390 (1993).

Then effective Section 780-113(a)(30), 35 Pa.C.S.A. prohibited the delivery of a controlled substance by an individual not licensed to do so. Specifically in this regard, in Count 7

---

[16] TT. 8/15/2005 p.583.
[17] Id. at pp.583-595.
[18] Id. at p.595.
[19] See: Petition and Exhibit X to the answer at p.5.

6

petitioner was charged with and convicted of delivery of cocaine with an aggregate weight of 111 grams on March 13, 2004.[20]

At the trial, Mark Hackett testified as a prosecution witness. Hackett testified that he had been previously stopped on drug charges and agreed to work as a confidential informant (TT.8/15/2005 p.283). He also testified that on March 13, 2004 he purchased the cocaine in question from the petitioner (TT.8/15/2005 pp.319-325). In addition, this testimony was corroborated by an undercover agent who was at the scene (TT.8/15/2004 pp. 506-508). Clearly, this evidence if believed was sufficient to sustain petitioner's conviction and for this reason does not provide a basis for relief.

Petitioner's final claim is that counsel was ineffective for failing to challenge the Commonwealth's delay in prosecution so that more charges could be aggregated thus resulting in sentence entrapment. In reviewing this claim, the Pennsylvania Superior Court noted that it had been waived but also responded that had the waiver not occurred the petitioner would still not be entitled to relief.[21]

> In Commonwealth v. Petzold, 701 A.2d 1363 1365 (Pa.Super.1997) the Court stated:
>
> Sentencing entrapment or manipulation is a doctrine developed and adopted in several Federal Circuit Courts of Appeals. It occurs when "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." ... It often is asserted in narcotics matters, typically reverse sting cases, in which government agents determine the amount of drugs a target will purchase. Sentencing entrapment or manipulation is similar to traditional notions of entrapment in that it requires extraordinary misconduct by the government. However, it differs from classic entrapment in that it is not a complete defense to criminal charges and, therefore, cannot serve as a basis for acquittal. Instead, it provides a convicted defendant the opportunity for a reduced sentence... (citations omitted).

This issue was raised in the trial court which conducted a hearing on March 22, 2010 at which time defense counsel explained that when the issue is raised the prosecution has

> To justify their actions in either increasing the weight of the sales or the number of buys, and that would involve mandatories, and then they have to demonstrate that they have a legitimate purpose in making six buys, arranging six buys if we are going refer to this case, we had a legitimate purpose as part of their

---

[20] See: Exhibit F to the answer at No.7.
[21] See: Exhibit TT to the answer at p.5.

7

investigation in making six buys, and not just for the purpose of running up the total mandatories that would be applicable to Mr. Cannon.

So Your Honor would have to determine after hearing from Agent Loadman, who was the lead agent in this case, whether or not they deliberately ran up the number of buys to keep him in prison for the rest of his life or if they had a legitimate reason as part of the investigation for doing six separate transactions, six separate buys (sic.) (TT. 3/22/2010 pp.26-27).

The Court then interjected:

As the trial judge I got to see all of what they [the investigators] were doing and it was pretty obvious that they were trying to build this up and follow him around the community to find out where all the drugs were because he knew all the players. They had aircraft that followed him in the wintertime. There was videotape that was shown that you could see the person going from different house to different house, getting into cars, and then there were people on the ground that followed him to track it that way as well.

So it was probably more to target other people than necessarily than to target him or to build up on him enough to have the bigger mandatory. It was a way of building a case. And I was going: Finally, the Commonwealth in this county is trying to get to somebody other than the street level dealer…

But that's why I know there was discussion about the fairness of having mandatories tacked against him in this case. There was never in the context of sentence manipulation or sentence entrapment, but it was a question of fairness, which is really what you are arguing…

So I always knew that wasn't the case, and that's probably why he got the sentence he did as opposed to one that was stacked up to the level that the Commonwealth had. (TT. 3/22/2010 pp.35-37).

Additionally, at that hearing Agent Loadman testified that the purpose of engaging in the ongoing purchases from the petitioner was an attempt to identify his sources of supply and not to secure an enhanced sentence (TT. 3/22/2010 pp.59-87). Following the hearing the court concluded "I don't think that the evidence bears out that there was evidence entrapment" (TT.3/22/2010 pp.88-89, 90-91). These factual findings are entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1).

The petitioner now claims that counsel was ineffective for failing to properly raise this claim. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the

effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

     In the instant case, while counsel did not raise the matter in the post-trial proceedings, it is also evident from the explanation of the trial court that there was no basis to conclude that the multiple buys from the petitioner were improperly motivated, but rather that they were appropriate in an attempt to learn the identity of petitioner's sources. As explained by the trial court, even if raised earlier in the prosecution a different conclusion would not have been drawn nor a different sentence imposed. For this reason this claim likewise does not provide a basis for relief.

     Thus, the petitioner has failed to demonstrate that his conviction and sentence were secured in a manner that was contrary to clearly established federal law or involved and unreasonable application of clearly established federal law as required by 28 U.S.C. §2254(d)(1) and he is not entitled to relief here.

     For this reason, it is recommended that the petition of Richard Allen Cannon for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

     Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

Respectfully submitted,

s/ Robert C. Mitchell

Filed: April 5, 2012

United States Magistrate Judge